IVEY REYNOLDS, administrator of William McFatridge, deceased, *et al.,* plaintiffs in error, *v.* JOHN M. HENDERSON, administrator of John Henderson, deceased, defendant in error.

### *Error to Johnson.*

A. recovered judgment against B. which was enjoined, and pending the injunction, A. died. Several executions had issued before the injunction was granted, the first of which was issued within a year after the rendition of judgment. B. died and the administrator of A. sued out a writ of *sci. fa.* to revive the judgment against the administrator and others, heirs at law and terre tenants of B. The *sci. fa.* was demurred to, but overruled, and judgment rendered in favor of the plaintiff against the heirs and terre tenants, and execution awarded against them in respect to the lands described in the writ, and for costs of suit: *Held,* that the heirs and administrator were properly joined as defendants in the writ: *Held,* also, that the rendition of the judgment and issuing of execution created a lien upon the lands of the defendants, which was not affected by his death, and that the administrator of the plaintiff was entitled to an execution against the lands.

SCIRE FACIAS in the Johnson Circuit Court, brought by the defendant in error against the plaintiffs in error. The

cause was heard at the October term 1845, upon demurrer, before the Hon. Walter B. Scates, the demurrer overruled, and judgment for plaintiff, &c.

The material facts appear in the Opinion of the Court.

*D. J. Baker,* for the plaintiffs in error.

The plaintiffs in error, besides the assignment of the general error of the Circuit Court in the overruling of the defendant's demurrer, and the giving of said judgment against the defendants other than the said Ivey Reynolds, administrator as aforesaid, specify these points, to wit:

1. Proceedings by *scire facias* in this case, to subject to sale for the payment of the judgment mentioned, the lands of which McFatridge, deceased, died seized, and which upon his death, descended to his heirs at law, cannot be sustained, unless *nihil,* as to the administrator of said deceased, had been first returned. 6 Bac. Ab. 114, title *"Scire Facias;"* also, 2 Saund. R. 72 f. n. (3.)

2. The administrator of the deceased has, under the laws of this State, when the estate of the deceased is insolvent, the whole and entire control of the estate, both real and personal, of the deceased, whom he represents, in respect to the payment of the debts of the deceased, and the sole power to subject the same to sale for that purpose; and when there is a personal representative of the deceased debtor, it is not in the power of his judgment creditor to withdraw from him this control and authority in the way now attempted to be done in this case; and if the lands described in the writ of *scire facias* shall be sold on this judgment, it will, notwithstanding, be competent for the administrator to sell the same lands again, under an order of the Circuit Court obtained according to the provisions of the statute in such case made and provided, and the title acquired by the purchaser under the execution against the heirs in this case; or in other words, the sale, if made on this judgment, cannot deprive the administrator of the right to sell the same lands under an order of the Court, and the title acquired under the latter sale will prevail against that acquired under the former. R. L. 648, §§ 110,

114. Personal estate insufficient, order to sell lands to pay debts may be obtained. R. L. 650, §§ 119, 120. Proceeds of such sale made legal assets. Ib. 646, § 105. Proceedings when estate is insolvent. Ib. 647, § 109. Certified copy of judgment, evidence, &c. Ib. 648, § 112. Power and jurisdiction of Probate Court. Ib. 616, § 15.

The uniform practice for sixteen years, under the Act of 1839, concerning wills and settlements of estates, has been in favor of the plaintiffs in error. By the common law, only the goods and chattels of the debtor, and the annual profits of the land, as they arose, and not the land itself, were liable to execution for debt or damages, &c. Toller on Executors, 409-416. 3 Jacob's Law Dic., title, *"Heir."* An execution cannot issue against decedent's estate, on a judgment obtained against him in his lifetime; but all such judgments must be classed against the estate, according to the provisions of the administration law. 7 Mass. 421. If estate of deceased is insolvent, the heirs are entitled to the rents and profits of his real estate, until it is sold for his debts. *Gibson* v. *Farley*, 16 do. 280.

3. The lien of the judgment mentioned in this writ of *scire facias*, does not authorize the judgment creditor in this case by this mode of proceeding, to obtain a sale of the lands of William McFatridge, after his death, and of which he died seized, when there is a personal representative, as there is in this case; but the lien of the judgment mentioned, if subsisting after the death of McFatridge and the appointment of his administrator, can be successfully asserted only by the claim of priority or preference of payment in the disposition of the assets in the hands of his administrator, from what source soever obtained. As to order in which debts are to be paid, at the common law, see Toller on Executors, 258, *et seq.* 3 Bac. Abr. 79.

The Act of February 12, 1823, does not embrace judgments, and this Court recognizes doctrine of vested rights and liens of judgments and executions accrued under Act of February 17, 1823, and of January 17, 1825. *Betts* v. *Bond*, Bre. 223, *Woodworth* v. *Paine's Administrators*, do. 294-5.

See, also, R. L. 371, §§ 1, 2; also Act relative to wills and testaments, &c., 646, §§ 105, 120, 110, 114. This Act repeals divers Acts and laws, and all Acts and laws conflicting with its provisions, with a saving of all rights accrued under them, &c., § 140.

4. The joinder in this writ of *scire facias*, of the personal representative and the heirs of William McFatridge, deceased, is irregular and without law to justify the same.

*J. C. Conkling*, for the defendant in error.

Under the peculiar laws of England, the decisions that *sci. fa.* must first issue against personal representatives were very proper, for the personal effects descended to the executor or administrator, and the real estate to the heirs, and the administrator had no interest whatever in the real estate. But the English Courts also decided that every person, who was to be made better or worse by the issuing of execution, should be joined in the *scire facias*. 1 Salk. 319; *Johnson* v. *Parmely*, 17 Johns. 271; *Griffin's Heirs* v. *Wilson*, 1 J. J. Marsh. 210. Under our statute, the administrator, in his representative capacity, has an interest in the lands in case goods and chattels are insufficient to satisfy the debts. In case they are insufficient, he should be made a party, for it may be that he has satisfied the claim out of the personal effects.

The statute in reference to the distribution of estates is only directory to executors after claims shall have been filed, and does not destroy the lien of judgment creditors. If so, the specific lien created by mortgage must also be destroyed, for there is no difference as far as the rights of creditors are concerned between such a lien and that of judgment creditors. This point has, in effect, been decided in the case of *Ballentine* v. *Beall*, 3 Scam. 20.

The Opinion of the Court was delivered by

YOUNG, J.* The record in this case shows, that John

---

* WILSON, C. J., and Justices LOCKWOOD and CATON did not sit in this case

Henderson recovered a judgment against William McFat-
ridge in an action of covenant, in the Johnson Circuit Court,
at the April term 1830, for the sum of $624·64, on which
several executions issued, without being satisfied, the first
of which was issued within a year and a day, from the last
day of the term at which the judgment was rendered; that
at the October term 1831, McFatridge filed a bill in chan-
cery, and obtained an injunction, restraining Henderson from
the collection of his judgment at law; which chancery suit
was continued from term to term until the November term
1840, at which time the injunction was dissolved; that in the
mean time, Henderson had died intestate on or about the
21st day of February, 1839; that letters of administration
were then granted upon his estate to John M. Henderson by
the Probate Justice of the Peace, in Macoupin county, that
being the county in which said John Hendorson lived at the
time of his death; that McFatridge also departed this life,
intestate, on or about the 25th day of January, 1840, without
having in any manner paid or satisfied said judgment, and
that letters of administration were granted upon his estate
to Ivey Reynolds, one of the plaintiffs in error, by the Pro-
bate Justice of the Peace of Johnson county, that being the
county in which the said McFatridge resided at the time of
his death; that said McFatridge died insolvent and that his
personal property is insufficient to pay the debts and claims
against his estate, exclusive of said judgment and costs; that
McFatridge died seized of the following real estate, to wit:
The north west quarter of fractional section nine (9), in
township fifteen (15) south, in range four (4) east of the
third principal meridian, containing 99 $\frac{2}{100}$ acres, and
the north west quarter of the south west quarter of section
twenty (20), in the same township and range, containing
forty acres, besides some other lands, all of which the de-
fendant in error contends is subject to be sold for the satis-
faction of said judgment, by virtue of the lien which attached
to said lands, before the death of the intestate, McFatridge.

Upon this statement of facts, John M. Henderson, as ad-
ministrator of John Henderson, deceased, sued out a writ of

*scire facias* against the plaintiffs in error, as administrator, heirs at law, and terre tenants of the said William McFatridge, deceased, requiring them to show cause at the May term of the said Johnson Circuit Court, 1844, why the said defendant in error, as such administrator, should not have execution of the said judgment against them, or some of them, by a sale of said lands, &c.

The cause was then continued from term to term until the May term 1845, at which time the plaintiffs in error filed a demurrer to the said *scire facias,* to which there was a joinder by the defendant in error, and the cause again continued until the October term 1845, when the demurrer was overruled by the Court. The plaintiffs in error abiding by the decision upon the demurrer, the judgment mentioned in the *scire facias* was revived for the sum of $624·64, and costs of suit, with an order that the defendant in error, who was plaintiff below, have execution as such administrator, of said judgment, with interest from the 29th day of April, 1830, against said defendants, except the said Ivey Reynolds, to be levied of the lands and tenements of which the said William McFatridge, at the time of his death, died seized, as described and set forth in the said *scire facias,* to wit: the north west quarter of fractional section nine (9), in township fifteen (15) south, range four (4) east, containing 99 $\frac{2}{100}$ acres, and the north west quarter of the south west quarter of section twenty (20) in the same township and range, containing forty acres, and the costs of suit to be taxed at $11·62½.

From this judgment, the defendants below have prosecuted a writ of error to this Court, and assign the following as causes of error, to wit:

1.   That a *scire facias* cannot be prosecuted against the heirs at law of McFatridge, so as to subject the real estate to execution, until *nihil* had been first returned as to the administrator of the deceased;

2.   That the estate of McFatridge being insolvent, his lands can only be sold on the application of the administrator for the payment of his debts; and that the judgment creditors can only obtain satisfaction of their judgments by com-

ing in for a proportionate share of the assets, after they shall have been thus realized by the administrator, according to the class to which such judgments against the estate may belong;

3.   That the Circuit Court erred in deciding that the lien mentioned in the *scire facias* continued after the death of McFatridge; and

4.   That the joinder of the administrator with the heirs at law of the decedent, in the *scire facias,* was erroneous, and vitiates the whole proceeding.

The foregoing statement of facts are recited at length in the *scire facias,* and the demurrer admits them to be true; and it is only necessary, therefore, to inquire whether the process is regular and against the proper parties; and whether Henderson's judgment, which had become a lien upon the lands of McFatridge by operation of law in his lifetime, still continued to operate after his decease.

And, first, as to the proper parties to be made defendants by the *scire facias.* It would seem that the objection for a misjoinder is not well taken in a case like this. Here there had been a judgment against McFatridge in his lifetime, which had become a lien upon his lands, and the administrator, as well as the heirs, was interested in the payment of it, if he had sufficient assets in his hands; or in showing that it had already been paid, if such had been the fact, at the time of sueing out the writ, as the administrator of the judgment creditor had his election, either to resort to his lien upon the lands for payment, which might call forth a defence from the heirs, as well as the administrator, or to demand payment from the administrator out of the personal effects of the estate, which would be a proceeding against the administrator alone. In this case, it is the object of the plaintiff to subject the lands to execution by virtue of his lien, and the heirs and administrator are properly joined as the defendants.

The 37th section of the Revised Statutes of 1845, which is similar to the former law on this subject, provides, "that whenever a judgment has been or may hereafter be obtained in any Court of record in this State, against any person, or

persons, who has, or shall, after the rendition of such judgment, die, it shall be lawful for the execution to issue against the lands and tenements of said deceased person, or persons, without first reviving the judgment against their heirs, or legal representatives; *provided,* however, that the plaintiff, or plaintiffs in execution, or his or their attorney, shall give to the executor or administrator, if there be any, of said deceased person, or persons, at least three months notice in writing of the existence of said judgment before the issuing of the execution; and *provided further,* that no execution shall issue until after the expiration of twelve months from the death of such deceased person or persons." From this section it manifestly appears, that an administrator should have notice of such a proceeding, and that it is not error to make him a party to the *scire facias* for that purpose. In the case of *Mitchell's heirs* v. *Smith's heirs,* 1 Littell, 243, the *scire facias* was to revive a judgment in ejectment, and the question was, whether the heirs alone, or the personal representatives, should have been made defendants. The Court said: "Had the judgment in ejectment been obtained against Mitchell alone, the *scire facias* against his heirs, without joining his administrator or executor, would have been improper. That upon a judgment for damages and costs, recovered against the ancestor in his lifetime, the heir at common law was in no manner liable; and although the heir is made liable by the Act of Assembly subjecting lands to the payment of debts, he is only made so in a joint action, against him and the personal representatives."

So it was determined in the case of *Griffith's heirs* v. *Wilson,* 1 J. J. Marsh. 209, that "a judgment against one in a personal action must be revived against his personal representatives, or against them and the heirs;" and where the judgment is against one who has since died, the *scire facias* may issue against the heirs, without the terre tenants, or without styling the heirs terre tenants. The heirs are liable as tenants, and a *sci. fa.* against the terre tenants, without the heirs would be erroneous; as there could be no judgment against the terre tenants, unless there is a return that there

are no heirs, or that they have no lands.   Bac. Abr. "*Scire facias,*" 418.

In this case, the *scire facias* is against the heirs, terre tenants, and administrator, and service upon all, and we hold the process and service to be regular and proper.

In regard to the question of lien, and of the prior right of the plaintiff to have execution of the judgment of his intestate by a sale of the land of the deceased, it is provided by the second section of the Act relative to judgments and executions, approved January 17, 1825, "that when any judgment shall have become a lien as aforesaid, and the defendant happens to die before execution shall have been issued thereon, the remedy of the person in whose favor the said judgment shall have been rendered, shall not be delayed or suspended by reason of the non-age of any heir or heirs of such defendant; but no execution shall issue upon such judgment until the expiration of one year after the death of such defendant, nor shall any previous law of this State, which gives no preference to the claims of a creditor of a deceased debtor, be so construed as to impair or affect the lien of any judgment as aforesaid."   And in the proviso to the first section of the same Act, it is declared, "that in case the party in whose favor any such judgment shall have been entered, shall be restrained by injunction out of Chancery, or order of any Judge or Court, either from issuing execution, or selling thereon, the time during which he shall be so restrained shall not be deemed or considered as any part of the said seven years."   Gale's Stat. 389.

It is very evident from these provisions, when taken in connection with that part of the Act, which makes the judgment a lien upon the defendant's lands, that it was not intended that the plaintiff should lose the benefit of the law in that respect by the death of the defendant. The lien having once attached will continue to operate until the judgment is satisfied.

In this case, execution was issued upon the judgment within a year and a day after its rendition, and during the lifetime of both the original parties to it; and its collection stayed by injunction out of Chancery which was not dissolved

until November, 1840, about one year and nine months after the death of the judgment creditor, and his administrator now asks to have execution of that judgment.

No good reason having been shown by the defendants against the allowance of his request, we are of opinion that he is entitled to his execution. Judgment affirmed with costs.

*Judgment affirmed.*